The next case is case number 20-3077, Western Missouri. Scott C. et al. v. Missouri Department of Elementary and Secondary Education et al. We're prepared to begin. Counsel, we'll hear from you first. Thank you, Your Honor, and may it please the Court, Jesus Sosette, Deputy Solicitor General for the State of Missouri. The text of Section 1988B allows for attorney's fees in actions, quote-unquote, to enforce Section 1983. But the McKinney-Vento Act does not clearly and unambiguously create substantive rights that are enforceable through Section 1983. The district court had no authority to issue its attorney's fee award, and it therefore should be vacated. At least three reasons support this result. First, the McKinney-Vento Act is primarily phrased as a directive to federal regulators, in this case the Secretary of Education, federal agencies, who are tasked with approving state plans that are submitted by states like Missouri. Second, the McKinney-Vento Act does not use the critical rights-creating language that the Supreme Court in Gonzaga and this court in Doe's sanctioned and needed to be used in a statute for it to create a private right of action. Supporting this second argument is the fact that, as my friend on the other side, Mr. Ferber, points out, in the Individuals with Disabilities Education Act, the IDEA Act, there is, the act ensures that children with disabilities must have access to a free and appropriate public education, and those rights, as interpreted, and that statute is interpreted in Cynthia Robinson and Frye and other cases from the Supreme Court, those are judicially enforceable rights that can be brought under 1983. That kind of language, despite the fact that the McKinney-Vento Act also recognizes a general policy to provide free, appropriate public education to homeless children, none of that kind of rights-creating language is in the McKinney-Vento Act. There was an attempt in 1990 to try to include language that would have made those obligations in the state plan to actually be judicially enforceable, but that language ultimately failed and never made it into the text of the McKinney-Vento Act itself. And finally, the third result, or the third argument I would put forward, Your Honors, is that the McKinney-Vento Act can be enforced through what this court said is the quote-unquote typical remedy in the Spending Clause cases, and that is for the feds to withhold or otherwise terminate funding when a state is not in  And so, I would argue that the McKinney-Vento Act does not create substantive rights that are enforceable through 1983, and therefore, this could not have been an action to enforce 1983 under 1988. I'll get to my friend, Judge Ross. Yes, counsel. Could you also go ahead and maybe address the elephant in the room, and that is that this case comes to us in an unusual posture and that that issue is not raised below. Can you tell us why we should address that issue now on appeal? Yes, Your Honor. I was about to get to that, and you are correct. As the state readily conceded in footnote one of its opening brief, this pure question of statutory interpretation under 1988 was not raised before the district court. That being said, we believe, well, there's really two ways to go about this. The first is we initially had said in footnote one of our brief that this may or may not be a jurisdictional issue to the extent that 28 U.S.C. 1343 is in this case. It's unclear to me whether or not that statute's actually at issue here. That would bring in Keene and some of this court's other cases to make it a subject matter question, so we did not further press that in our reply brief, so that's one way to go about it, and therefore, the sort of the waiver issue, not raising it below, it doesn't matter at all. The second point, though, Your Honor, is even if it's not a jurisdictional issue under this court's decision in Lindley-Myers, it is a question of authorization. It's a purely legal question of statutory interpretation that this court routinely exercises its discretion to address purely legal questions that don't require additional evidence. My friend on the other side does not dispute that this is a pure question of law that requires no additional evidence, and the only thing he's really put forward is the court is not required to address the issue. I don't dispute that at all. Well, isn't there kind of a three-prong test out there where they ask us to look at whether or not the result is beyond reasonable debate, and then the second prong is whether a manifest or an injustice will occur, and then we get to pure legal question? I don't believe so, Your Honor. I disagree. I think you're referring to the Orion case, which is at 281 F3D 733, and there are exceptions. So there are three different disjunctive exceptions that the court can resort to that somebody can claim, an appellant can claim for the court to actually address the question on appeal. The first, as you point out, is one where the case is beyond doubt. That's the Singleton case. We're not claiming that exception in this case. The second is the manifest injustice exception. Again, we're not claiming that either, but the third disjunctive exception that can be used, and Judge Colleton in his NFL case that we cited and some of the other cases like Orion, et cetera, universal title, they treat them as disjunctive exceptions. The one we are claiming here, Your Honor, as indicated in our footnote one, and we repeat this again on page two of our reply brief, is the purely legal question exception, which is exception number three, and that requires no additional factual evidence. That is what we're claiming. That is what we think is before the court. We're not claiming any of the other exceptions. Counsel, let me ask you about that. It may not be a manifest injustice to the attorney general's office, but what about to the taxpayers of Missouri that will have to pay this money? Well, Your Honor, I mean, certainly that is a concern, that it is a rather large attorney's fee award. I mean, over a million dollars. I forget how much exactly is the precise amount. I just want to be clear in my duty of candidate of the court that we have not precisely. I mean, the court always has discretion to reach any one of those exceptions because it is disjunctive. But the exception that we have claimed in this case, the one that we thought was the cleanest and the most straightforward, is the purely legal question exception. And again, that's not to say that the court can't. Again, it's a discretionary doctrine. The court, if it wants to reach the manifest injustice exception, it can do that. And I would agree with you that it is. It would be manifestly unjust to the taxpayers. That being said, I just want to be very clear to the court that our position to this point, in full candor of the court, is this is a purely legal question that requires no additional evidence. They have not disputed that on the other side. And that's what we're proceeding on. Again, the court has discretion. Counsel, what do we do? As I understand the record below, you actually told the district court that you did not dispute that the plaintiffs were entitled to attorney's fees. So that almost seems to be an affirmative adoption of the theory that they do get attorney's fees and that you are simply contesting the amount. Your Honor, I do not dispute, and we addressed this in our reply brief as well, that at addendum at page eight, as Judge Laurie also pointed out in her opinion, the phrase was, we do not contest whether. So there's that first phrase at the beginning, which says that we don't dispute that they're entitled to reasonable attorney's fees. The next line after that, as Judge Laurie interpreted it, is she took that comment to mean that we do not contest that they are prevailing parties under 1988. That's true. We don't disagree that they are. So two responses to that question, Your Honor. The first is we do not dispute that if this, that they are entitled to reasonable attorney's fees as prevailing parties, if this is in fact an action to quote unquote enforce 1983. The second... But counsel, you didn't add that to the district court. So the district court didn't have any way of understanding your caveat now, correct? Well, no, because I mean, it wasn't raised. But to say that we somehow expressly conceded the point by not raising it, I just don't see how that could be the case. All I'm saying is the context of that. And again, I think that was the second thing I was going to say is, you know, we don't dispute that even if they don't have attorney's fees under the McKinney-Vento Act, it doesn't necessarily mean that they're not entitled to the incidental number of hours and fees that they submitted on their 14th Amendment claim. So that statement in context, again, is saying, one, we're not disputing that they're prevailing parties if in fact this is an action to enforce 1983. We don't believe it is. And then secondly, I'm not saying they're not entitled. This whole argument I've put forward, that we've put forward under the text and structure of 1988, I can't apply that to the 14th Amendment, Your Honor, because I do believe that that would essentially be an action to enforce 1988. All I'm saying is they wouldn't be entitled to fees under McKinney-Vento. I think they are entitled to fees under the 14th Amendment. So our statement in context would provide those two reasons. So what would that do to the consent decree? Anything to the agreement that the state of Missouri agreed? If in fact your position is that there's no private right of action. And the way I understand your argument is that that was the bulk of the reasoning behind the negotiations and the ultimate settlement or agreement. What does it do to your agreement? As far as I can tell, it doesn't do anything to it. It's not on appeal right now. We're not contesting it. We agree to it. It has nothing to do, the underlying litigation itself has nothing to do with attorney's fees. We specifically reserved attorney's fees pursuant to the settlement agreement, which was at JA 157 and 228, where we're specifically reserving contesting the fees themselves. But no, it doesn't do anything. We're still complying even to this day. We provide, I think, monthly to quarterly reports that we're complying with the consent decree itself that we entered into. But again, this resolution will deprive them of attorney's fees under the McKinney-Vento Act to the extent that's what they submitted. And again, I would submit, Your Honor, that this was truly, in their words, a novel McKinney-Vento Act case. It was the basis of the settlement agreement. It was the basis of everything else. That is how Judge Laurie saw this case as well. It's the crux. But it doesn't do any ruling in our favor in this case, Your Honor. It has no effect whatsoever on the consent decree. We are going to continue to comply with the consent decree. And to this point, again, there's been no indication that we violated it or have any plans to violate it. We're going to comply with the consent decree right now. So if you took that the next step, if your position is that there's no private right of action for purposes of attorney's fees, Section 1988, but you say that that has no impact on the underlying consent decree, do you believe that the consent decree can be fully supported by their equal protection claim, their 14th Amendment claim? I guess I'm not really following, Your Honor. Well, if you're saying that the Missouri is still complying, and in your view, any ruling saying that they're not entitled to attorney's fees under the Act because it's not a private right of action doesn't affect the underlying consent decree. So then is it your position that the consent decree can be fully supported by the 14th Amendment equal protection claims? Yes, Your Honor. I would say that whatever the ruling is on the McKinney-Bento issue on this, in this case, again, it could still be fully supported. I guess I don't want to get into hypotheticals because I want to ensure my friend, Mr. Ferber, that we're going to be following the consent decree. But to the extent that the litigation was reopened, there is an alternative adequate ground to still uphold the consent decree based on the equal protection claim. That we're not disputing at all, Your Honor, even for this FISA appeal as well. Can't the consent decree be supported by McKinney-Bento even if attorney's fees aren't available? Certainly, if I would just say that, Your Honor, if hypothetically, if the litigation was reopened and we had an opportunity to try to, I guess, relitigate the merits, if you will. I'm not saying that we wouldn't. I guess I would say that it would be an option to us to try to bring all available defenses. But as it stands right now, Judge Laurie could conclude that for purposes of the merits and not necessarily attorney's fees, that maybe the McKinney-Bento Act does, in fact, support the consent decree. But at this time, we don't we don't have any intention to disturb that consent decree. We're following it to this day, monthly and quarterly. And that's what we intend to do. But we're not agreeing to which, again, you know, under the record and the agreement itself, we never agreed to pay these attorney's fees. We said we would contest them on any available grounds. And that's exactly what we're doing. I see my time is starting to run down. If the court has no other questions, I will save my time for rebuttal. You may do so. Thank you. Counsel, in response. May it please the court. This is Joel Ferber, attorney for the plaintiff respondents in this matter. This action was filed on behalf of homeless students who sought equal treatment under the McKinney-Bento Act. Two other federal statutes and the U.S. Constitution. It was resolved through a court ordered settlement that benefited all parties, not just the homeless children who benefited from changes in policies and practices, but the state benefit from benefited from avoiding protracted litigation and from from being and for being at the table to help shape the settlement and the timing and the measures to be adopted in the settlement. But importantly, settlements, including this one, benefit the judicial system, because the system is more efficient when parties talk to each other and favorably resolve their dispute without litigating the merits. Settlements should be final. The plaintiff certainly expected this settlement to be final. On appeal, however, what my friend, Mr. Sete, attempts is an ambush. Instead of presenting the issues that were considered and decided below, the state takes an entire reveals an entirely new issue, one that easily could have included in its motion to dismiss below and one which we never would accept at a settlement. And he had he asked to reserve this issue. So these these. These arguments, these belated 11th hour arguments mean that a thorough and thoughtful settlement process is not final and offers no real relief, only never ending litigation, which cannot be good for the courts. Fortunately, your honor's counsel, do you think that you can separate out the the conclusions, the conclusion that your opposing counsel is is asking us to make, which is there's no private right of action for purposes of attorney's fees. Can that be separated out from the settlement agreement? The consent decree that actually was based in part upon a private right of action under the act. Your honor, I am very worried about that. You know, to say that that you can't get fees because we because we don't prevail in the merits because we have no rights. The next thing I could see would be a motion to modify or alter the settlement. And Mr. Sete even hinted at all defenses would be available to them. It's kind of part of the whole, you know, continually changing positions of the state in this case that that we could we may have to litigate that issue. I fear about whether the settlement can stand when the underlying rights that we were litigating that that are now in question. So I'm worried about that. We would take our best shot. No question. But I do think what we were looking for and what all parties look for in settlement is closure. There's no closure. It's no accident, your honors, that the state hasn't say we've cited a lot of cases. And there are plenty more where consent and decrees are signed with constitutional and statutory claims where where attorney's fees are awarded. They haven't cited a single case because there is none where courts went back and undid a consent decree or in under a fees motion, went and examined the underlying rights in the case. This is why we settle lawsuits, your honors, to avoid, you know, they had a claim on. They had a motion to dismiss. They among the things they raised on equal protection was failure to exhaust. Well, had they not raised that there, then can they raise that in an attorney's fees motion? Well, counsel, I appreciate the position that you're in. But at the same time, the state of Missouri can't create a private right of action. Well, our position, your honors, that there is a private right of action, but that this issue just cannot be and not be addressed in this case should not be addressed in this case. Your honors, I would like to move on to why we don't need to go down this road at all. And we don't need to undo the settlement. We don't need to address private action. There are at least three points here. The first is that plaintiffs meet the requirements for fees under Section 1983 and Section 1988 on its face under Hensley versus Eckerhart and all of the relevant cases. We're prevailing parties in an action to enforce federal law through the settlement of this case. We achieved a material alteration of the legal relationship between the parties and succeeded on significant issues in the litigation. All parties agreed with this state vigorously lit it, litigated this action, the district court filing an arguments motion to dismiss opposing our fees. But let's be clear, in spite of the continually shifting positions in the reply brief and an oral argument. The state conceded that it said they said the quote was state defendants do not dispute the plaintiff is entitled reasonable attorneys fees pursuant to the joint motion for consent order and judgment. That should have been the end of the matter on this issue. But now the state is trying to create a new body of law that just doesn't exist to deny a fees to prevailing parties. The statute says in any action or proceeding to enforce a provision of Section 1983, the court in its discretion may allow the prevailing party reasonable attorneys fees. This was state not acknowledged when it said they were entitled to fees. Fees are they said fees are only available for actions for cases in which that are brought under Section 1983. What they are trying to do is add words that are not in the statute. They're basically saying that the new test would be plaintiffs may only be prevailing parties for reasonable attorneys fees only for actions or proceedings to enforce a provision of Section 1983, in which the underlying statutory claim in a settled case is subsequently found by court to be valid. That cannot be the test. The state was right the first time. If you can't rely on McKinney-Vento, are you relying on the equal protection claim or what would be the basis for the fee award? Well, relying on both and this is this is where the this argument is waived, Your Honor. But, yes, as we make very clear in our brief, we have a constitutional claim to the equal protection clause. The cases to look at are Maher versus Gagne and St. Louis effort for AIDS. Maher's Supreme Court case effort for AIDS is from this circuit. And that case was was very clear that as long as you have, first of all, Maher versus Gagne, it was very clear that as long as you have a constitutional claim in the case at the time of settlement, plaintiffs are entitled to fees. The court said the court does not need to consider whether fees are available or whether the underlying statutory claim is valid as long as there was a constitutional constitutional claim remaining in the case at the time of settlement. That's accurate. But the state isn't the only one who comes to us in an unusual posture, because as I read your brief to the district court, you told the district court that the McKinney-Vento Act is the crux of the case and the basis for the settlement agreement and consent decree. So it seems that you've told the district court that you're only seeking fees under McKinney-Vento and not the equal protection claim. With due respect, Your Honor, that is simply not accurate. That was a direct quote from your brief. under the effort for AIDS and Rogers versus Arkansas cases. So the test is not crux of the case. It's a red herring. That is not the test. The crux of the case is in a case with a constitutional and statutory claim. The constitutional claim is never the crux of the case because the courts, as we said in our papers and in the case law, always avoid constitutional issues wherever possible. If you look at the effort for AIDS case, which under the defendant's view, the state's view would be wrongly decided. That case was all about the Affordable Care Act and the marketplace and navigators. But there was still a constitutional claim never addressed on the merits that remained in the case. And because the violations rose out of the same common nucleus of operative facts, these were available and not just on the constitutional claim. And where cases settle, it's very clear that as long as the claim remains, the constitutional claim remains in the case, doesn't ever have to be litigated or addressed. Plaintiffs are entitled to fees. So that is just not the crux of the case is a construct that the state has made up that just isn't the law and could never be the law. The reality is we had we had a set of facts. We had a strong case with multiple claims, two of which still remained in the case. And by the way, your honor, this is not when you settle cases, you don't go back and look at why did we settle because of this claim or that claim? For all I know, the attorney general's office settled because they feared our equal protection claim. I also want to address we haven't had a chance to talk about the waiver argument. The general rule is clearly waiver. And the case on a brief round pages 13 and 14 says that that new new issues are invariably waived unless unless a good reason is offered. And it has to be a pretty legal issue. No good reason has been offered here. The reason the reason it can't be because, you know, Mr. Assett is a more clever lawyer than the lawyers below. It can't be because they didn't like the settlement. It can't believe just because there's new ideas or new people in charge of the case. There's no good reasons. They had every opportunity in their motion to dismiss in their attorneys fees motion in their oral arguments to raise this, and they didn't do it. So there's no good reason to to all of a sudden do it now. What if the court is being asked to approve fees that Congress didn't authorize? Is that a good reason? Well, our position is Congress did authorize it, and you have a constitutional claim that that at a certain point, a case is settled. And that that and once it's settled, you have to honor the settlement. The Supreme Court precedent says that we are entitled to fees when there was a consent decree in an action filed under section 19 and action to enforce section 1983. And that's what this was. So we under under Congress's plain language in section 1988, we are entitled to fees. Your honor, I want to point out this is clearly not jurisdictional under Davis versus Passman. Put note 16. The Supreme Court makes clear there's a big difference between cause of action and jurisdiction. And it's very clearly laid out. So that's why Mr. Said they didn't press that argument. It's just not not there. So your honor, you know. The state doesn't attempt to show manifest injustice. We would say that the manifest injustice is is to us because we would bear the brunt of not honoring the settlement. The standards for waiver have not been met. That is the general law. And by the way, I have to say, your honor. Mr. Is simply correct. Incorrect to say this is a purely legal issue at this point. You know, the position in there in their breathing keeps shifting. But the latest iteration, as I understand it, in the reply brief is, well, let me just say in their brief, their appellate brief on pages 9, 10, 11, 12. They said Judge Lowry got it wrong. We're entitled to no fees. Now they say, well, we might be entitled to fees. If we have an action under section 1988. Well, we're entitled to fees if we have a viable 19 equal protection claim. Well, under their latest argument, they are saying that the court would have to look on remand about, you know, about whether we're into what are hours on equal protection versus something else. They're trying to selectively review our time records and say, well, this much time is spent on this claim. This much time was spent on that claim. They're looking at our declarations out of context, of course, to say what, you know, what was our time spent on? There are absolutely factual questions at this point based on how they're arguing the case now. Now, he may argue differently on rebuttal, but based on the way the state is arguing this case right now, there are there are clearly factual issues. You know, maybe we want to oppose the attorney general below or the state officials below to say, why did you settle the case? Was it equal protection? Was it McKinney Bento? I don't know the answer. So could you address the joint and several liability issue that was raised for the first time in a reply brief? It seems to me it hasn't been fully briefed or the state hasn't had the opportunity to brief that.  Our position is that, first of all, the district court did not abuse its discretion under the Snyder case. Abusive discretion is clearly the standard here. We said all along in our motion, in our motion for fees, the state is liable for all of it. This is another one of these red herrings. The state could have said, oh, no, we're less at fault than the district. So we're only liable for 20 percent or 30 percent. It didn't do that. So we said from the get go, state's liable for all of it, including fees, by the way, that the district was not liable for. So so we said all along they were on notice that we said they were liable for all of it. The district court properly provide that apply the general case law that we cite in our brief that again, when these when these cases, the claims against both defendants arise out of the same common nucleus of operative facts, the normal general rules to hold the defendants jointly and severally liable. It's not our fault. They made a weak they made a weak effort to say an oral argument that, well, maybe we're 20 or 30 percent. We don't really know. It was clear on the table that they were liable for all of it. They just didn't raise that issue. So they were on notice. Your Honor, I would say the fact that I have with 54 seconds is yet another reason why this complex issue of private right of action should be not not addressed for the first time here. I would point the court to just July 27th of this year. And to last seven circuits said that these enforceability of private right of action under Section 1983 is a complicated issue. No doubt. It's been addressed by one. This event, which is addressed by one circuit. We are confident that that we meet the requirements, sufficient rights, creating language is absolutely there. I would love to tell you how this case is different from those versus Gillespie, but that's an issue for another day. So for all these reasons and many that I haven't gotten to your honors, we respectfully request that this court uphold the district court's decision and and grant us the attorney's fees to which we entitled and uphold this settlement that we all bargained so hard for. Thank you so much for your time. Thank you for your argument. Thank you, your honors. Just a few quick points. The first of the seven circuit case, Mr. For my good friend, Mr. Ferber referenced from July of this year. That's my understanding. My understanding is that would have been handed down after the briefs were submitted. I've not received a 28 day letter on that. So with all due respect to the court, I can't comment on that precise decision. I'm happy to file an opposition or supplemental briefing on that precise case. But I just at this point have no idea what it's about. The second question is, Mr. Ferber is right. He's, again, a good friend. And we've gone up against each other many times here in Missouri on the jurisdictional question. Again, I can see that this isn't a 1343 case along the lines of Keene and Mount Healthy. I agree with this footnote, too. It's clearly not a jurisdictional question because it would be a purely 1331 case. And as I understand the way they pled this complaint, it's purely 28 U.S.C. 1331. That's how they've pled it. So if it's not a 1343 case, I don't disagree with them that it is not a jurisdictional question on the notion that on the settlement agreement. Again, we're not trying to disturb the settlement agreement. I can just tell you right now our position is we have no intention to undo that settlement agreement. We have every intention to continue to comply with that settlement agreement and consent to be which we have been doing monthly and quarterly basis. I get a lot of e-mails from Mr. Ferber more recently on that. We have no intention. And, again, there's a public policy, as this court said, in the Jovi First Bank Systems case at page 1070. There is a public policy in favor of the enforcement of settlement agreements. And that includes the language that we agreed to, which is we can contest attorney's fees, which is what we're doing here. And then two other points quickly, Your Honor. I refer to the court of the White Mountain Apache case at page 854 that I submitted in a 28-day last night. Mr. Ferber is basically bringing the Fourth Amendment claim for the first time as the basis for the attorney's fee award, but his own statements contradict that. And, finally, I would just say that there is no additional evidence that we would need to take here. He's already submitted evidence on the Fourth Amendment claim that's in the record. It rises out of the same common nucleus of operative fact. There's no reason that we need to take additional factual findings. For those reasons, Your Honor, if the court doesn't have any other questions, I would ask respectfully that the court reverse the discourse judgment and vacate the attorney's fee award. Thank you. Thank you to both counsel for your argument. It was helpful, and we will take the matter under advisement.